# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

|  |  |  |  |
|---|---|---|---|
| JOHN ADAMS, et al., | ) | | |
| | ) | | |
| **Plaintiffs,** | ) | | |
| | ) | | |
| v. | ) | No.: | 3:00-CV-560 |
| | ) | | (VARLAN) |
| LOCKHEED MARTIN ENERGY SYSTEMS, | ) | | |
| | ) | | |
| **Defendant.** | ) | | |

## MEMORANDUM OPINION

### I. Introduction

This civil action was filed pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.* The case is before the Court on the plaintiffs' motion for partial summary judgment [Doc. 64] and the defendant's motion for summary judgment [Doc. 66]. The issues raised have been exhaustively briefed by the parties [*see* Docs. 39, 64, 68, 72, 73, 75, 76, 79, 80, 83, 84, 89, 91, 92, 93, 94, 95, 96]. The Court has carefully reviewed these motions and the parties' numerous responses to these motions in light of the entire record and controlling authority, and the issues are now ripe for determination.

For the reasons set forth herein, the plaintiffs' motion for partial summary judgment [Doc. 64] will be DENIED, and the defendant's motion for summary judgment [Doc. 66] will

be GRANTED whereby summary judgment will be entered in defendant's favor with respect to all of plaintiffs' claims, and this case will be DISMISSED.

## II.    Relevant Facts

The plaintiffs are comprised of a group of almost 200 former employees of defendant, Lockheed Martin Energy Systems ("Energy Systems"), who managed the Y-12 Plant at the Oak Ridge National Laboratory.  The plaintiffs formed a large portion of the Information Technology Service ("ITS") division of the Y-12 plant and were responsible for overseeing and managing the computing, information systems, and communication infrastructure.  In 1998, Energy Systems decided that it would outsource its ITS division in an effort to avoid layoffs.  Energy Systems informed the ITS division of its decision, the reason for its decision, and the fact that the tentative transfer date was January 1, 1999.  Energy Systems published an expression of interest ("EOI") detailing its desire to outsource these employees, which originally required, *inter alia*, that the entity employing the ITS division employees provide a benefit package "substantially equivalent" to Energy Systems's benefit package.  Energy Systems later changed the EOI to require a "market competitive" benefit package.

Energy Systems received twelve responses to its EOI, after which it developed a request for proposal ("RFP").  Three firms responded to Energy Systems's RFP, and Energy Systems employed a consulting firm, Towers and Perrin, to evaluate the salary and benefits outlined in the bids of the remaining companies compared to the salary and benefits offered by Energy Systems and to determine if those salaries and benefits were market competitive.

2

Towers Perrin found that all of the bidders were offering market competitive salaries and benefits, and Energy Systems chose to award the outsourcing contract to Science Applications International Corporation ("SAIC").

On January 13, 1999, Energy Systems informed the ITS division employees that they would transition from Energy Systems employees to SAIC employees on March 1, 1999. Energy Systems further informed the ITS division employees that SAIC would accept rollovers of their 401(k) plan accounts. However, on February 24, 1999, Energy Systems informed the ITS division employees that such a rollover was not possible due to the IRS "same desk" rule. The IRS same desk rule prohibits employee elective deferrals to 401(k) plans until that employee's "separation from service." SAIC would have to accept a "trust to trust" transfer of the employees 401(k) plans in order to successfully transfer the accounts, and SAIC refused to do so because the cost of trust to trust transfers had not been factored into its proposal. Energy Systems sought a private ruling from the IRS declaring that the ITS division employees had indeed been separated from their service. However, the IRS refused to make such a ruling and found that the same desk rule prohibited a rollover of 401(k) funds. Accordingly, the ITS division employees' 401(k) plan assets remained with Energy Systems although the ITS division employees were now employees of SAIC.[1]

---

[1] The record reflects that in January of 2002, the same desk rule was revoked. Accordingly, after that date, any outsourced employees were eligible to rollover their 401(k) plans.

3

The plaintiffs allege that the true purpose of the Energy Systems outsourcing was to reduce the high salaries and benefits that it paid ITS division employees. Furthermore, the plaintiffs allege that Energy Systems outsourced them to later replace them with younger employees who had lower salaries. The plaintiffs also contend that Energy Systems made misrepresentations to them about the nature and specifics of the outsourcing agreement and that they relied on those misrepresentations, causing them to remain employees of Energy Systems and agree to the outsourcing agreement and forgo other employment opportunities. Specifically, the plaintiffs allege that Energy Systems knew or should have known that they would be unable to rollover their 401(k) plans and misled them about this aspect of the outsourcing agreement until a belated disclosure after the plaintiffs had forgone other employment opportunities. Finally, the plaintiffs allege that they did not receive the severance pay that they were entitled to receive and that Energy Systems created a new and superior severance package after the outsourcing agreement became effective.

In their complaint, the plaintiffs allege four general grounds for relief. In Count 1, the plaintiffs allege breach of contract, including breach of implied contract, quasi contract, *quantum meruit*, and/or unjust enrichment. In Count 2, the plaintiffs allege misrepresentation, fraudulent and/or negligent inducement to enter into a contract, and breach of fiduciary duty and/or breach of confidential relationship. In Count 3, the plaintiffs allege age discrimination pursuant to Tenn. Code Ann. §§ 4-21-101 *et seq*. Finally, in Count 4, the plaintiffs allege alternative and/or additional claims arising under ERISA, 29 U.S.C. §§ 1001 *et seq*. In their motion for partial summary judgment, the plaintiffs assert that they are entitled to summary

4

judgment on three ERISA claims: (1) whether Energy Systems violated its fiduciary duty under ERISA by lying about, misleading, and/or failing to properly investigate the plaintiffs' ability to rollover their 401(k) plan benefits to their new employer under the outsourcing agreement; (2) whether Energy Systems violated its fiduciary duty under ERISA by lying about, misleading, and/or failing to properly investigate the benefits available to the plaintiffs under the outsourcing agreement; and (3) whether Energy Systems is liable to the plaintiffs for severance pay after their involuntary termination. In its motion, Energy Systems moves for summary judgment on all of the plaintiffs' claims.

## III. Analysis

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of establishing there is no genuine issue of material fact lies upon the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which

5

a reasonable jury could find in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *See id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *See id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *See id.* at 250.

B. State Law Claims

Energy Systems asserts that ERISA preempts the plaintiffs' claims that "relate to" the employee benefit plans. Specifically, Energy Systems argues that ERISA preempts the Tennessee common-law claims outlined in Counts 1 and 2, including breach of contract, quasi contract, *quantum meruit*, unjust enrichment, misrepresentation, fraudulent and/or negligent inducement to enter into a contract, breach of fiduciary duty and/or breach of confidential relationship, because these claims relate to the plaintiffs' employee benefit plans, and ERISA's language precludes state law claims that would provide a remedy for recovery of a pension or welfare benefit.

The Court agrees that ERISA preempts the majority of these state law claims, all of which stem from and relate to the denial of various plan benefits allegedly owed the

6

plaintiffs. The Sixth Circuit, following the direction of the Supreme Court, has emphasized the broad scope of ERISA preemption, noting that "virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Tinsley v. General Motors Corp.*, 227 F.3d 700, 703 (6th Cir. 2000) (quoting *Cromwell v. Equicor-Equitable HCA Corp*., 944 F.2d 1272, 1276 (6th Cir. 1991)). Even if the state law is not specifically designed to affect an ERISA plan or only has an indirect effect, it is still preempted. *Metropolitan Life Ins. Co. v. Pressley*, 82 F.3d 126, 129 (6th Cir. 1996); *Zuniga v. Blue Cross & Blue Shield of Michigan*, 52 F.3d 1395, 1401 (6th Cir. 1995). A state law "relates to" a plan if it "has a connection with or reference to such a plan," which is not "too tenuous, remote or peripheral." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97, 100 n.21 (1983). "It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Cromwell*, 944 F.2d at 1276 (citation omitted). Plaintiffs' claims alleged in Counts 1 and 2 of their complaint that seek recovery of lost benefits in damages are thus preempted by ERISA.

Plaintiffs' remaining state law claims include (a) the claims in Counts 1 and 2 that allege misrepresentation and breaches of contract regarding promises and misrepresentations made by Energy Systems to the plaintiffs about what their salaries would be when employed by SAIC, and (b) the claim in Count 3 that Energy Systems discriminated of the basis of the plaintiffs' age when outsourcing them and later hiring younger employees in their stead in violation of Tenn. Code Ann. §§ 4-21-101 *et seq*.

7

The plaintiffs's age discrimination claim must fail for two reasons. First, plaintiffs failed to file their claim within the applicable statute of limitations. The statute of limitations outlined in the Tennessee Human Rights Act is one year. *See* Tenn. Code Ann. § 4-21-311. Here, the plaintiffs filed their complaint eighteen months after the triggering event, their termination. *See Weber v. Moses*, 938 S.W.2d 387, 391-92 (Tenn. 1996). Specifically, plaintiffs were outsourced on March 1, 1999, and they filed their complaint on October 10, 2000. Moreover, the plaintiffs have offered no evidence in support of their claim. Rather, they have simply alleged that they were older employees and that their replacements were younger employees. This bare allegation, standing alone, fails to support a claim for age discrimination. *Cf. Allen v. Diebold*, 33 F.3d 674 (6th Cir. 1994) (finding that a similar allegation was insufficient to support a claims under the ADA). Plaintiffs have also failed to address this issue in their numerous pleadings. Therefore, pursuant to Local Rule 7.2, the Court deems the plaintiffs' failure to address this claim as a "waiver of opposition to the relief sought." LR 7.2 E.D. TN.

The plaintiffs' breach of contract claim seeking compensation for the alleged lower salaries that they received as SAIC employees must also fail. The plaintiffs were employees at will, thereby divesting them of any property right in their employment. *See Bennett v. Steiner-Liff Iron & Metal Co.*, 826 S.W.2d 119, 122 (Tenn. 1992) (holding that an employee at will does not possess a contractual right allowing a breach of contract claim). Moreover, plaintiffs similarly have failed to address this claim in their numerous pleadings.

8

Accordingly, dismissal of this claim is also proper pursuant to Local Rule 7.2. *See* LR 7.2 E.D. TN.

Plaintiffs have addressed their claim of misrepresentation seeking compensation for the alleged lower salaries that they have received as SAIC employees. When addressing their ERISA breach of fiduciary duty claims, plaintiffs allege that Energy Systems misled or made false statements to ITS division employees in response to their inquiries about the salaries that they would receive under the outsourcing agreement. Plaintiffs allege that Energy Systems informed them that they would receive salaries that were equal to or better than their Energy Systems salaries. However, plaintiffs have failed to point to any specific evidence in the record to indicate that the salaries of plaintiffs were lower after they became SAIC employees. To the contrary, Energy Systems points to the deposition testimony of Patricia Baird, the Energy Systems employee who supervised the outsource transition and who is a current plaintiff and SAIC employee. In that deposition, Ms. Baird testifies that the outsourced employees' salaries remained the same once they transitioned to SAIC and that their SAIC salaries also reflected their recent Energy Systems raise. [Doc. 41]. In light of that unrefuted testimony, the court finds that is no genuine issue of material fact as to this claim.

In sum, the court concludes that all of the plaintiffs' state claims are preempted, time-barred, waived, or insufficiently supported. Thus, summary judgment is appropriate with regard to the above claims.

C. ERISA Claims

Plaintiffs have alleged numerous violations of ERISA.  However, in their voluminous pleadings, plaintiffs have only addressed those ERISA claims for which they seek summary judgment.  Pursuant to Local Rule 7.2, the Court deems the plaintiffs' failure to address these other ERISA claims as a "waiver of opposition to the relief sought."  LR 7.2 E.D. TN. Accordingly, the Court will focus on the claims addressed in the plaintiffs' pleadings.

(1)  Breach of Fiduciary Duty

The plaintiffs allege that Energy Systems breached its fiduciary duties under ERISA by (1) lying about, misleading, and/or failing to properly investigate the benefits available to the plaintiffs under the outsourcing agreement, and (2) lying about, misleading, and/or failing to properly investigate the plaintiffs' ability to rollover their 401(k) plan benefits to their new employer under the outsourcing agreement.  The defendant counters that the plaintiffs are confusing fiduciary duties with business decisions and that plaintiffs have no factual support for their allegations.

The Court's analysis will address the threshold question of whether Energy Systems was acting in its fiduciary capacity when it decided to outsource the plaintiffs or when it made statements to the plaintiffs regarding the effect the outsourcing agreement would have on its 401(k) plans.  ERISA defines the context in which a fiduciary duty is triggered as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or

disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A); *Hamilton v. Carell*, 243 F.3d 992, 998 (6th Cir. 2001) (noting that ERISA defines the term 'person' to include a corporation and citing 29 U.S.C. § 1002(9)). "The Supreme Court has recognized that ERISA 'defines "fiduciary" not in terms of formal trusteeship, but in functional terms of control and authority over the plan . . . .'" *Id.* (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993)). Moreover, the Sixth Circuit has stated that a court "must examine the conduct at issue to determine whether it constitutes 'management' or 'administration' of the plan, giving rise to fiduciary concerns, or merely a business decision that has an effect on an ERISA plan not subject to fiduciary standards." *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 718 (6th Cir. 2000) (internal quotation marks and alterations omitted) (citing *Sengpiel v. B.F. Goodrich Co.*, 156 F.3d 660, 666 (6th Cir. 1998)). Thus, "[i]n every case charging breach of ERISA fiduciary duty . . . the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *see also Mich. Affiliated Healthcare Sys., Inc. v. CC Sys. Corp.,* 139 F.3d 546, 549 (6th Cir. 1998).

Case law has traditionally distinguished between acts involving business decisions and acts involving the management and administration of the benefit plans. *See Varity v. Howe*,

11

516 U.S. 489, 502-03 (1996); *Akers v. Palmer*, 71 F.3d 226, 231 (6th Cir. 1995); *United Steelworkers of Amer. v. Cyclops Corp.*, 860 F.2d 189, 198 (6th Cir. 1988); *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1471 (11th Cir. 1986). It is only the latter category that triggers the employer's fiduciary duty. *See, e.g., Sutter v. BASF Corp.*, 964 F.2d 556, 562 (6th Cir. 1992).

Sale of a division of a company is a business decision that does not trigger an employer's fiduciary duties. *See Ames v. American National Can Co.*, 170 F.3d 751, 757 (7th Cir. 1999) (finding that "when company representatives are negotiating the sale of a division, they are not acting in their capacity as a plan fiduciary, and thus they do not bear the legal obligations that go along with fiduciary status," and rejecting plaintiff's argument that defendant had breached its fiduciary duty by placing its "commercial interests above the plan participants' benefit interests"). *Cf. Varity v. Howe*, 516 U.S. 489 (1996) (finding that an employer's act of deceiving employees in order to persuade them to transfer employment to their new subsidiary, whose financial ruin was imminent, in order to allow the employer to evade its obligation to pay its employees benefits is a breach of fiduciary duty). Energy Systems's outsourcing is analogous to the sale of a division of a company because even though Energy Systems continued to receive the benefit of plaintiffs' work after they were outsourced to SAIC, the employer/employee relationship was severed by the outsourcing agreement, and Energy Systems was no longer responsible for compensation or management of plaintiffs. However, while the decision to outsource a division is a business decision, an employer has a fiduciary duty to answer any questions about the effect of the outsourcing truthfully. *See Varity*, 615 U.S. at 503 ("To offer beneficiaries detailed plan information in

12

order to help them decide whether to remain with the plan is essentially . . . plan-related activity [triggering a fiduciary duty].”); *see also* Jeffrey Lewis & Dan Feinberg, *Varity Corp. v. Howe: The Plaintiff's Perspective*, 5 No. 2 ERISA Litig. Rep. 3, 9 (1996) (“*Varity* does not impose any duties on employers in structuring business transactions. All that it imposes is the obligation to give an honest answer to the employee if the employee's question about the business transaction is about its effect on employee's benefits.”).

Plaintiffs argue that while Energy Systems claims that it did not have an obligation to structure its outsourcing agreement in a manner most favorable to its employees, Energy Systems did have an obligation to respond truthfully to employee inquiries regarding benefits and that Energy Systems misled the plaintiffs in response to their inquiries. Plaintiffs argue that they were told that their benefits would be market competitive and that they relied on this misrepresentation to their detriment.[2] Specifically, plaintiffs allege that Energy Systems's reliance on the report generated by the consulting firm Towers and Perrin was insufficient to fulfill their fiduciary obligation to make good on their assurance that outsourced employees would receive market competitive salaries and benefits. Plaintiffs further assert that Energy Systems did not instruct Towers and Perrin to evaluate the market

---

[2] Plaintiffs originally alleged that they were deceived by Energy Systems's assurances that the outsourcing employer would provide benefits that were “substantially equivalent” to those offered by Energy Systems [Doc. 1]. In support of this claim, plaintiffs noted that the original draft of the RFP required the outsourcing bidders to include substantially equivalent benefits and salaries, whereas the finalized version of the RFP required that the bidders provide “market competitive” benefits and salaries. However, in their later pleadings, plaintiffs allege that they were deceived by Energy Systems's assurances that their benefits would be market competitive [Doc. 84].

13

competitiveness of the outsourcing bids and therefore could not rely on the report to reflect market competitiveness. Plaintiffs also allege that Energy Systems breached its fiduciary duty by assuring plaintiffs that they would be able to rollover their 401(k) benefits under the outsourcing agreement when in fact they were not able to do so due to the IRS same desk rule.

Plaintiffs argue that their case is analogous to *Varity v. Howe*, *supra*, a Supreme Court case in which an employer breached its fiduciary duties under ERISA by deliberately misleading its employees in order to evade its obligation to pay benefits. *See Varity*, 516 U.S. at 757-58. In *Varity*, the employer misled its employees by assuring them that if they agreed to transfer their employment to the employer's newly-formed subsidiary, their benefits would be secure. *Id.* at 493-94. However, the employer had created the subsidiary as a vehicle for transferring its failing business enterprises, and the employer knew that the subsidiary's financial ruin was imminent. *Id.* Indeed, the subsidiary ended its second year in receivership at which time the subsidiary's employees lost their non-pension benefits. *Id.* at 494.

Also relevant to the instant analysis is the case of *Ames v. American National Can Co.*, 170 F.3d 751 (7th Cir. 1999), discussed *supra*. In *Ames*, a similarly large group of former employees brought suit against their former employer alleging, *inter alia*, that it had breached its ERISA fiduciary duties by placing its commercial interests above its employees' interests when negotiating the sale of the former employees' division. *Id.* at 754-57. Specifically, the plaintiffs argued that the employer had breached its fiduciary duty not to

14

mislead them about their plan benefits when its representatives informed the plaintiffs that the benefit package offered by its new employer would be "very comparable" to their existing benefit package. *Id.* at   In rejecting this argument, the Seventh Circuit opined that the plaintiffs had failed to "acknowledge one of the fundamental principles of ERISA plan management[:] . . . . [W]hen company representatives are negotiating the sale of a division, they are not acting in their capacity as a fiduciary, and thus they do not bear the legal obligations that go along with fiduciary status." *Id.* at 757 (citations omitted).  In reaching its conclusion, the *Ames* court also distinguished *Varity v. Howe,* noting that "Varity representatives had affirmatively misled employees into believing that a transfer to a new company would have no effect on their benefits," and that the facts of *Ames* were dissimilar. *Id.* at 757-58.  The *Ames* court further observed that there was no evidence of the active misrepresentation found in *Varity* – the plaintiffs' new employer was able to provide the promised benefits, and the plaintiffs knew that they would no longer receive benefits from their former employer.  *Id.* at 758.  Furthermore, the court noted that plaintiffs' questions about benefits were answered by their new employer, and their former employer's assertion that benefits would be comparable was a mere opinion.  *Id.*

In the instant case, as in *Ames*, plaintiffs' questions about their SAIC benefits were answered by Energy Systems, and in the Court's view, Energy Systems's representation that benefits would be market competitive and that plaintiffs would be able to rollover their 401(k) plans were more than mere opinions.  The Court's conclusions are supported by the fact that Energy Systems made these representations in memoranda to employees and that

15

market competitiveness was a criterion announced in the outsourcing RFP. Energy Systems's representations herein do not amount to the misrepresentation evidenced in *Varity*. Unlike the situation in *Varity*, the plaintiffs' new employer, SAIC, was able to provide plaintiffs with benefits. It is particularly noteworthy that a large number of the plaintiffs are still employed by SAIC. Furthermore, while plaintiffs directed questions to Energy Systems about the terms of the outsourcing, these plaintiffs, unlike the *Varity* plaintiffs, understood that they would no longer receive benefits from Energy Systems as they were no longer Energy Systems's employees.

In sum, Energy Systems's decision to outsource its ITS division was a business decision that did not trigger ERISA fiduciary duties. To the extent that Energy Systems had a fiduciary duty to respond truthfully to employees' inquiries about the effect the outsourcing agreement would have on benefit plans, the record does not reflect that Energy Systems responded with the deliberate intent to deceive evidenced in *Varity*. Furthermore, plaintiffs fail to prove that Energy Systems assured them that their benefits, as opposed to their total compensation package, were market competitive. Moreover, while Energy Systems made a late disclosure regarding the plaintiffs' ability to rollover their 401(k) plans, they did in fact make the disclosure, as well as sought a private ruling from the IRS exempting the plaintiffs from the rule barring their ability to rollover their plans. Such action is not tantamount to the deliberate misrepresentation evidenced in *Varity*. Furthermore, plaintiffs claim that they were harmed by Energy Systems's alleged misrepresentations because they would have pursued other employment opportunities if they had been properly informed of the conditions

16

of their employment at SAIC. However, they fail to assert why the late disclosure barred their pursuit of other opportunities after the outsourcing agreement was in effect.

Accordingly, the Court finds that there is no genuine issue of material fact regarding plaintiffs' breach of fiduciary duty claims, and Energy Systems is therefore entitled to summary judgment as a matter of law.[3]


D. Severance Pay

Plaintiffs also claim that Energy Systems deprived them of their right to severance pay benefits by changing defendant's longstanding severance pay policy shortly before the plaintiffs were outsourced.[4] Specifically, the plaintiffs allege that Energy Systems changed its severance pay policy from one in which severance pay was normally available to employees who were terminated as a result in reduction of force to one which excluded those individuals, thereby depriving the plaintiffs of a vested benefit. Plaintiffs argue that Energy Systems's intent to deprive them of this benefit is evidenced by Energy Systems's

---

[3] In the context of their breach of fiduciary duty claims, plaintiffs have briefed the issue of whether Energy Systems has violated the National Defense Authorization Act for the Fiscal Year 1993 and its amendments. However, the Court has reviewed the plaintiffs' fourth amended complaint [Doc. 52] and finds that it contains no allegations that Energy Systems has violated the Act. Accordingly, the court finds that plaintiffs have failed to plead a cause of action pursuant to this Act as required by Fed. R. Civ. P. 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."

[4] Plaintiffs originally alleged that the severance policy was oral [Doc. 39]. However, in a later pleading [Doc. 72], plaintiffs refer to the severance policy enacted on October 31, 1989, which was later modified on February 10, 1998 and again on December 1, 1998 [Doc. 41].

representations that plaintiffs were being outsourced due to its need to reduce its workforce. Plaintiffs assert that they were constructively terminated and that Energy Systems changed its severance plan before the outsourcing agreement was implemented in order to avoid its contractual duty to pay severance benefits. In support of this argument, plaintiffs rely on the affidavit of one plaintiff who testifies that he was assured, both orally and in writing, that he would receive severance pay in the event of an involuntary termination. Plaintiffs argue that if the severance plan is a benefit plan governed by ERISA then they are entitled to recovery under § 510 of ERISA, 29 U.S.C. § 1140; on the other hand, if the severance plan is not governed by ERISA, then they are entitled to recovery under state law.

In response, Energy Systems first argues that the former severance plan was written and that plaintiffs were not entitled to severance pay under the former plan. The language of the former plan, which became effective on February 10, 1998, states, in relevant part:

> No employee shall be eligible for layoff allowance if the Senior Human Resources Official determines that he or she had an offer of employment or failed to fully pursue an available employment opportunity on or about the time that his or her employment terminated with the Company to go to work for any affiliate of the Company or any other organization to which work previously performed by the Company is, or has been, transferred whether by contractor, subcontractor, or otherwise or by a decision of the U.S. Department of Energy or otherwise.

[Doc. 65]. The revised severance plan, which became effective on December 1, 1998, provides in relevant part that if an employee "receives an offer of employment with a subcontractor within the Department of Energy Oak Ridge Operations, if the contract with the third party required the third party to offer employment to such individual in connection

18

with the transfer of work. . . . ," the employee will not be eligible to receive severance pay [Doc. 41].

Energy Systems further asserts that it told the plaintiffs that they would not receive severance benefits as a result of the outsourcing agreement several months before the enactment of the revised plan. Accordingly, Energy Systems argues that plaintiffs' assertion that the December 1, 1998 amendment to the severance plan prevented them from making an "informed decision" is insupportable. Additionally, Energy Systems informed plaintiffs that it would require the outsourcing employer to include a provision entitling the outsourced employees to severance benefits if they were involuntarily terminated during the first three years of their employment with that company. Finally, Energy Systems argues that plaintiffs' reliance on the affidavit of a plaintiff who claims that he was told that he would receive severance pay in the event of an involuntary termination is misplaced, even assuming that the Court were to deem his outsourcing an involuntary termination. Energy Systems asserts that ERISA controls the outcome of this claim, and ERISA does not recognize oral modifications of written benefit plans.

Plaintiffs' argument that the December 1, 1999 amendment to the severance plan divested them of their severance plan benefits must fail because the clear language of the plan reflects that these plaintiffs would not have been entitled to severance benefits. The former plan excluded employees who had offers for employment at the time of termination. Here, all plaintiffs were extended offers of employment by SAIC. Therefore, plaintiffs may only recover if they can prevail on their argument that they would have been entitled to

19

receive severance under the 1989 version of the severance agreement and that their severance plan benefits were vested benefits.

When determining whether the plaintiffs were entitled to receive severance under the 1989 version of the severance agreement and whether their severance plan benefits were vested, the Court must first determine which law to apply when interpreting the document, *i.e.* whether the severance plan is a welfare plan as defined by ERISA and therefore governed by federal common law or if it is instead governed by state law principles. *See Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613 (6th Cir. 2002). As the Sixth Circuit has noted, "not all severance pay plans are ERISA plans." *Id.* at 616. The determination of whether a plan is an ERISA plan turns on several factors, including the degree of discretion retained by the employer over the distribution of benefits and whether the distribution of assets creates an "on-going demand on employer assets." *Id.* Notably, a "one-time lump sum distribution of severance benefits is not consistent with ERISA's definition of a welfare benefit plan." *Id.* (citing *Sherrod v. General Motors Corp.*, 33 F.3d 636, 638-39 (6th Cir. 1994)). The severance plan at issue calls for a one-time, lump sum distribution [Doc. 41]. Accordingly, the Court finds that the contract interpretation should be governed by state law principles.

In that view, Plaintiffs argue that the case of *Vargo v. Lincoln Brass Works*, 115 S.W.3d 487 (Tenn. Ct. App. 2003), is instructive regarding the correct interpretation of a severance plan under Tennessee law. *Vargo* teaches that absent any language stating an intent not to be contractually bound, "courts will construe provisions in an employee handbook or manual stat[ing] that the employer guarantees or unequivocally commits to

20

provide a particular benefit or condition of employment to be contractually binding on the employer." *Id.* at 491 (footnotes and citations omitted). Furthermore,

> Whether an employee handbook or manual contains contractually enforceable terms depends upon the specific language used in the handbook or manual. *Rose v. Tipton County Pub. Works Dep't*, 953 S.W.2d [690,] 692 [(Tenn. Ct. App. 1997)]. The interpretive rules used to determine what the language means are the same as the rules used to construe contracts. Accordingly, the courts will focus on the four corners of the manual or handbook and the other related employment documents and will construe these documents as written. They will also give the terms in the documents their natural and ordinary meaning, *Williams v. Maremont Corp.*, 776 S.W.2d 78, 80 (Tenn. Ct. App. 1988), and will construe these terms in the context of the entire agreement.

*Id.* at 491-92. As in *Vargo*, the language of Energy Systems's 1989 severance plan does not state whether Energy Systems intended to be contractually bound by the plan. However, as in *Vargo*, Energy Systems did state that eligible employees "will be paid" several times in reference to severance benefits if they met the applicable criteria [Doc. 41]. This contractually vague language will be construed against the drafter. *See Hanover Ins. Co. v. Haney*, 425 S.W.2d 590, 592-93 (Tenn. 1968). Accordingly, the Court finds that the language of the plan embodies an enforceable obligation to pay eligible employees severance benefits.

The plan specifically states that employees who were "laid off on account of work (reduction in work force)" are due severance benefits as calculated under the severance plan. Thus, the Court must now construe the meaning of the term "lack of work." The Court finds that the plain meaning of the term "lack of work" does not encompass outsourced employees. The term lack of work implies that one is no longer employed, or at the very least, no longer

holds the same job, thus necessitating a need for severance benefits in order to provide compensation during a term of unemployment. *Cf. Headrick v. Rockwell Intern. Corp.*, 24 F.3d 1272, 1274 (10th Cir. 1994) (construing the plain language of the term "lack of work" not to encompass a situation where employees were hired by a successor corporation). Accordingly, the Court finds that while plaintiffs possessed a vested right to severance benefits under the 1989 severance plan, the facts surrounding their termination make them ineligible to receive those benefits. Therefore, summary judgment is also appropriate as to this claim.

## IV. Conclusion

For the reasons set forth herein, the plaintiffs' motion for partial summary judgment [Doc. 64] is hereby DENIED, and the defendant's motion for summary judgment [Doc. 66] is hereby GRANTED whereby summary judgment will be entered in defendant's favor with respect to all of plaintiffs' claims, and this case will be DISMISSED.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE